## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                                No. 3:18-cr-119 (SRU)

vs.

ANTHONY VITO                                            November 14, 2018

### DEFENDANT ANTHONY VITO'S
### MEMORANDUM IN AID OF SENTENCING

Anthony Vito calls his father from jail every day. They talk about his future and what went wrong with his life. His plan is to work in his father's construction company after his release. His family visits him regularly: it is never too late for this strong family support.

He is only 28 but has amassed a lengthy criminal record since age 15 of fairly minor criminal cases all relating to his heroin addiction and suffers from the attendant medical issues from drug abuse (PSR¶¶99-104). As accurately noted in the PSR (¶ 147), Anthony has "committed many of [his] crimes either under the influence of drugs, or to buy drugs".

Anthony has agreed with the government that a sentence of 41 to 51 months incarceration would be reasonable and sufficient and he asks for a sentence of 41 months. Amendment 794 of the Sentencing Guidelines would allow the Court to give him a minor role adjustment (See argument, Section IV.C.2, *infra.*)

The facts are not in dispute (PSR ¶¶ 9-15). Anthony drove Zachary Provost to three locations which Provost robbed while brandishing what he claimed was a gun (a Mobil Station, a

Dunkin Donuts within the Mobil station, and the Thomaston Savings Bank[1]. Provost took a total of $2,530.00. Anthony had met Provost in Massachusetts where Provost suggested robbing banks and small businesses for drug money.

The day after the Thomaston robbery, Anthony's girlfriend overdosed on heroin at the motel where the three were staying and he gave her CPR and called 911. He told police responding to the call, that Provost had a gun and drugs and police arrested Provost on a warrant. He immediately admitted his involvement in the crimes to police, in driving Provost to the bank and knowing that he was going to commit a robbery. Anthony stayed involved with Provost because he received free drugs from him, but was afraid of Provost who spoke of "suicide by cop".

In accordance with Rule 32(o) of the Local Rules of Criminal Procedure, Anthony Vito respectfully submits this memorandum in aid of sentencing. Based on consideration of all the factors set forth in 18 U.S.C. § 3553(a), the Defendant asks the Court to impose a sentence of 41 months. He has a substantial substance abuse history and would greatly benefit from the Bureau of Prisons' 500 hour Residential Drug Abuse Program.[2]

I.      **The Sentencing Court Must Consider All of the Factors Set Forth in 18 U.S.C. § 3553a in a Holistic Manner When Determining an Appropriate Sentence for Anthony Vito.**

Since 2005, the United States Supreme Court has consistently stated that the Sentencing Guidelines are advisory only, and, therefore, that a District Court must consider all of the factors set forth in 18 U.S.C. § 3553(a) in a holistic manlier. See *Kimbrough v. United States*, 128 S. Ct. 558 (2007); *Gall v. United States,* 128 S. Ct. 586 (2007); *United States v. Booker*, 125 S. Ct. 738

---

[1] Provost also robbed a Key Bank, but Anthony was unaware of this and of the fact that Provost was armed in that incidents. He is not charged in that offense by federal authorities and his state court case has been dismissed .
[2] Probation and the Government likewise make this recommendation. See PSR ¶140.

(2005). Certainly the Guidelines remain "the starting point and initial benchmark" for the sentencing Court, yet the Court "may not presume that the Guidelines range is reasonable." *Gall,* 128 S. Ct. at 596-97. To the contrary, the Court "must consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Id. That is, the Court "must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence"; *United States v. Roque*, 536 F. Supp. 2d 987, 989 (E.D.Wis. 2008) (quotation marks omitted; citing cases); and impose "individualized justice" for each defendant based on a consideration of all of the factors in § 3553(a). *United States v. Crosby*, 397 F.3d 103, 111-12 (2005).

Although each factor of § 3553(a) must be considered, a District Court must not engage a mathematical, isolated calculation of each factor. Rather, the Supreme Court "has emphasized that §3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008). That tenet, the parsimony principle, instructs District Courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. See 18 U.S.C. § 3553(a). "In the final analysis, then, the gloss supplied by Kimbrough signifies that a district court should not evaluate a request for a variant sentence piecemeal, examining each section 3553(a) factor in isolation, but should instead consider all the relevant factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Rodriguez*, 527 F.3d at 228. "This inquiry should be guided by, but not made unflinchingly subservient to, the concerns expressed in the statute's various sub-parts." Id.

Thus, when fashioning a sentence that is "sufficient, but not greater than necessary,"

§3553(a)(2) provides that the District Court should consider the applicable Guidelines Range and any pertinent policy statements; see § 3553(a)(4)-(5); as well as the following factors:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed --

   (a)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (b)   to afford adequate deterrence to criminal conduct;
   (c)   to protect the public from further crimes of the Defendant; and
   (d)   to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available; and

4. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

See 18 U.S.C. § 3553(a)(2). Under the post-Booker sentencing scheme, "even if a specific sentencing rationale cannot be considered under the aegis of a particular sub-part of §3553(a), such a proscription does not bar consideration of that factor in the course of a more holistic review of the full panoply of section 3553(a) factors." *Rodriguez*, 527 F.3d at 229.

In this case, a holistic examination of all of the § 3553(a) factors strongly favors a sentence of 21 months together with a lengthy period of supervised release and other conditions imposed by the Court. Such a sentence would be "sufficient, but not greater than necessary," for Anthony Vito.

II.   **The History and Characteristics of Anthony Vito Counsel Strongly in Favor of a Sentence of 41 months**.

Under § 3553(a), the Court must consider Anthony Vito's history and characteristics when fashioning an appropriate sentence. At 28 he has accrued a serious list of crimes, but almost all for the purposes of obtaining drugs, or obtaining cash to buy drugs. He is an addict and

4

his involvement in this crime was for the purpose of "free drugs".

### III.     The Nature and Circumstances of the Offense.

The Defendant has no objection to the facts as portrayed in the PSR. He had a lesser role in the crime than did Provost. He did not organize or manage other members.

### IV.     Calculation of the Advisory Guidelines Range.

In this case, the Court should consider the following when calculating Anthony Vito's Guidelines range: (A) the computation made by the Probation Office; and (B) the agreement of the parties in the Plea Agreement and (C) Downward departure or variance issues. Each consideration will be addressed in turn.

#### A.     The Probation Office Computation of the Guidelines Range.

The Probation Office has calculated that Anthony Vito's Guideline's total offense level is 25 and his criminal history category is VI. (See PSR¶ 111).  He faces a guidelines imprisonment range of 110 to 137 months. He agrees with this calculation, but asks the Court to give effect to the agreement of the parties.

#### B.     The Parties have Agreed that a Sentence of 41 to 51 months is Reasonable.

The parties have agreed in a Plea Agreement dated June 8, 2018 that a sentence of 41 to 51 months is reasonable and sufficient.

> The Government understands that the defendant would seek a downward departure or variance from the sentencing guidelines. In view of the sentencing factors outlined in Section 3553(a) including the history and characteristics of the defendant, nature and extent of the defendant's criminal history  and the defendant's role in the crimes, the parties agree that a sentence of imprisonment within a range of 41-51 months would be reasonable and sufficient, but not greater than necessary, to achieve the goals of sentencing. Accordingly, the parties agree to argue for a sentence of imprisonment within that range. (See Plea Agreement, page 5).

The defendant would ask the Court to give effect to that agreement.  Provost was sentenced to 96 months of incarceration and committed an additional seven bank and commercial robberies throughout Connecticut, Massachusetts and Rhode Island. He was the leader and or ganizer of this crime.

C.  **Departure Issues**

1.  **The Court Should Depart, based upon *Fernandez*.**

In *United States v. Fernandez,* 877 F2d 1138, at 1145 (2d Cir 1989), the Circuit empowered district judges to depart from Guidelines Ranges to give effect to Plea Agreements. Court need to strengthen and not weaken the plea bargaining system. Impeding the plea bargaining system was never intended by the Guidelines, and considering the large number of drug trafficking cases handled in this circuit each year[3], to reuse to give effect to Plea Agreements will only make the administration of justice more difficult. See generally, Schwartz, *Options in Constructing a Sentencing System: Sentencing Guidelines under Legislative or Judicial Hegemony*, 67 Va.L.Rev. 637, 680-681 (1981).

2.  **The Defendant Seeks a Downward Departure Based on His Role in the Offense**

Anthony respectfully submits that he is entitled to a Four Level Reduction due to the recently-adopted Sentencing Guidelines Amendment 794. The Court is obligated to determine what role Anthony played in the crime, compared to the role of Zachary Provost. If that role was

---

[3] Scholars estimate that about 90 to 95 percent of both federal and state court cases are resolved through this process (Bureau of Justice Statistics, 2005; Flanagan, T., and Maguire, K. (1990). Sourcebook of Criminal Justice Statistics, 1989. Washington, DC: U.S. Department of Justice, Bureau of Justice Statistics.

a "minimal" one compared to that of Provost, he is entitled to a Four-Level Reduction under the

Sentencing Guidelines.  For example, as the Second Circuit recently described Guidelines

Amendment 794 in *United States v. Soborski,* 708 Fed.Appx 6 (2d Cir. 2017) that:

> "Under §3B1.2 of the Guidelines, a defendant's offense level is reduced by two levels if he
> was a minor participant in any criminal activity, four levels if a minimal participant, and
> three levels if falling somewhere between those two categories. U.S.S.G. §3B1.2."
> *Soborski* at 10.

The Second Circuit went on to describe Amendment 794's impact on sentencing for

"participants" in a "criminal activity" or in a many-participant conspiracy as is alleged here:

> Amendment 794, which became effective in November 2015, less than a year before
> Soborski's sentencing, modified significantly—especially within this Circuit—the factors
> that a district court should consider in deciding whether to apply the reduction. It added to
> the Guidelines commentary the following non-exhaustive list of factors that the district
> court "should consider" among the "totality of the circumstances":
>
> (i)     the degree to which the defendant understood the scope and structure of the criminal
>         activity;
>
> (ii)    the degree to which the defendant participated in planning or organizing the
>         criminal activity;
>
> (iii)   the degree to which the defendant exercised decision-making authority or
>         influenced the exercise of decision-making authority;
>
> (iv)    the nature and extent of the defendant's participation in the commission of the
>         criminal activity, including the acts the defendant performed and the responsibility
>         and discretion the defendant had in performing those acts;
>
> (v)     the degree to which the defendant stood to benefit from the criminal activity.
>         U.S.S.G. app. C, amend. 794 (amending U.S.S.G. §3B1.2 cmt. n.3(C)). *Soborski* at
>         *10.

Amendment 794 also clarified that a reduction for a minor role is not necessarily precluded

by a defendant's performance of "an essential or indispensable role in the criminal activity," and

that a defendant with an essential or indispensable role may still receive a role reduction if he or

she was "substantially less culpable than the average participant in the criminal

activity."   Significantly, in the commentary for Amendment 794, the Sentencing Commission meaningfully changed the phrase "substantially less culpable than the average participant" to "substantially less culpable than the average participant in the criminal activity." *See* U.S.S.G. §3B1.2 cmt. n. 3(C). The Second Circuit described in *Soborski* why this addition would be crucial to this Court's determination of the appropriate sentence in Mr. Carpenter's case:

> Explaining its reason for adding the words "in the criminal activity," the Commission described a circuit split over the meaning of "the average participant": some circuit courts interpreted it to mean the average among those "participat[ing] in the criminal activity at issue in the defendant's case," *id.*, while other circuits—including ours—looked to the average participant among "the universe of persons participating in similar crimes," *id.* (citing *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999)). The Commission stated that it added the words "in the criminal activity" because it favored the former interpretation, under which "the defendant's relative culpability is determined only by reference to his or her co-participants in the case at hand."  We give the Commission's "interpretation of its own Guideline controlling weight unless it is plainly erroneous or inconsistent with the regulation or violates the Constitution or a federal statute." *United States v. Lacey*, 699 F.3d 710, 716 (2d Cir. 2012) (internal quotation marks omitted). The Commission's clear directive is for courts to determine a defendant's relative culpability only by reference to co-participants in the case at hand, and we perceive no reason not to give its interpretation controlling weight. *Soborski* at *10-13.

3.  **The Court should depart Downward as the Total Offense Level Seriously Overstates the seriousness of the Offense**

The Court should depart downward because the resulting offense level would grossly overstate the seriousness of the offense. §2131.1 App. Note 19. As the commentary to §2131.1 makes clear, however, "[t]here may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted." §2131.1 App. Note 19. Such a departure, provided for in the Guidelines commentary, is thus an encouraged basis for departure under the Guidelines. See *Koon v. United States*, 518 F.3d, 94, 96 (1996); *Crosby*, 397 F.3d at 112.

Certainly, the defendant's large number of minor criminal cases, *e.g.,* shoplifting and retail theft have driven his high criminal history and provide a reason for a sentence beneath the

Guidelines range. This can be accomplished either by a departure from the Guidelines, or a non-Guidelines sentence.

**V.      The Remaining §3553 Factors Support a Non-Guidelines Sentence.**

As mentioned previously, the Court must balance all of the factors set forth in § 3553(a) in order to gain a "holistic" view of an appropriate sentence for Anthony Vito. Thus, in addition to the advisory Guidelines ranges, the Court must consider each of the remaining §3553(a) factors in its overarching effort to determine a sentence that is "sufficient, but not greater than necessary," for Anthony. In this memorandum, he respectfully submits that each factor, whether considered alone or in combination with the other factors, compels a sentence of 41 months.

**VI.   The Goals of Sentencing under §3553**

**A.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**.

Anthony Vito's case demonstrates the strong penalties that are associated with possession and sales of drugs. In other words, this case demonstrates that the Government will swiftly hold individuals accountable for the crime to which he pled guilty.

Retribution for engaging in wrongful conduct that is prohibited by law is of course a strong interest in all cases -- a defendant should get a merited response to his deeds.

**B.      The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct.**

No one could look at Anthony Vito's situation and conclude that it would be anything but undesirable to pursue the same course of conduct. A 41 month sentence should provide adequate deterrence.

**C.     The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant.**

In determining an appropriate sentence, courts must also consider the need for the sentence to "protect the public from further crimes of the defendant." §3553(a)(2)(C). In Anthony Vito's case, the risk of recidivism is hopefully deterred if he receives treatment for his drug abuse. Anthony Vito does not need to be further incarcerated beyond 41 months in order to protect the public.

**D.     The Need for the Sentence Imposed to Provide the Defendant with Needed  Educational or Vocational Training, Medical Care, or Other Correctional  Treatment in the Most Effective Manner.**

Educational or vocational training would be useful for this defendant. He does require substance abuse treatment.  (PSR ¶¶ 129, 131(6)).

**E.     The Goal of Rehabilitation Would Not Be Served By a Severe Sentence**

Another factor under §3553(a) is the need for rehabilitation. §3553(a) (2) (D). As the Court stated in *United States v. Carvajal*, "[a] judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe that that necessary to satisfy the goals of punishment." No. 04 CR 222(AKH), 2005 WL 476125, at *6 (S.D.N.Y. Feb. 22, 2005).

**F.     Anthony Vito's History and Characteristics Warrant a Sentence of 41 Months.**

After evaluating the Sentencing Guidelines and calculating a potentially applicable Guidelines range, as sentencing court must consider the remaining §3553(a) factors "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth by Congress". *Kimbrough,* 128 S.Ct. at 570. Sentencing Courts now have the obligation to consider factors that were discouraged under the pre-*Booker* mandatory Guidelines regime, such as the

history and characteristics of the defendant, the likelihood of recidivism, and the public's need for protection, because they are relevant in determining the "history and characteristics" of the defendant" under. §3553(a)(1). E.g. *Kimbaugh*, 128 S.CT. at 570.

**VII.    The Types of Sentences Available.**

**A.    A Term of Imprisonment**

Based on his total offense level and a criminal history category of VI, his guidelines range is 110 to 137 months. (PSR ¶111). The Plea Agreement calculates his criminal history category at III and the government has asked the Court to abide by the parties agreement to impose a sentence within the 41 to 51 month range as suggested in the plea agreement.

**B.    Probation**

Probation is not applicable here (PSR ¶¶115 and 116) .

**C.    Split Sentences**

A Split Sentence would not be appropriate here.

**VIII.  Fine and Restitution**

**A.  Fine**

Anthony is unable to pay a fine based upon his present financial situation (PSR ¶109). The guidelines range for a fine is $20,000 to $200,000.00. (PSR ¶ 119). There is a mandatory $100 special assessment due pursuant to 18 U.S.C. §3013. (PSR ¶ 118).

B.    **Restitution**

Restitution is set forth at PSR ¶121 of $2,530. This should be joint and several with his co-defendant Zachary Provost.

**VIII.  Conclusion**

The Parties have agreed that a sentence of between 41 and 51 months is reasonable.

Anthony Vito respectfully requests that the Court sentence him to a 41 month period of

incarceration and to a facility with a 500 hour Residential Drug Abuse Program.


RESPECTFULLY SUMITTED
DEFENDANT, ANTHONY VITO

BY      */s/Jonathan J. Einhorn*
            JONATHAN J. EINHORN, ESQ.
            129 WHITNEY AVENUE
            NEW HAVEN, CONNECTICUT 06510
            FED. BAR NO. ct 00163
            203-777-3777
            einhornlawoffice@gmail.com

## CERTIFICATION

I hereby certify that on this 14th day of November, 2018, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.


/s/ *Jonathan J. Einhorn*

JONATHAN J. EINHORN